IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

PERFORMANCE BUSINESS            )
FORMS, INC.,                    )
                                )
v.                              )        NO.  3:03-0931
                                )        JUDGE CAMPBELL
THE REYNOLDS AND REYNOLDS       )
COMPANY, et al.                 )

MEMORANDUM

The Court held a <u>Markman</u> hearing on June 30, 2005.  Defendant/Counter Plaintiff

Reynolds and Reynolds Company ("Reynolds") asserts that Plaintiff/Counter Defendant

Performance Business Forms, Inc. ("Performance") has infringed a patent owned by Reynolds.

The patent at issue is U.S. Patent No. 5,779, 543 (the "'543 Patent").  The Court construes the

disputed claim terms of the '543 Patent as set forth herein.

BACKGROUND FACTS

The '543 Patent issued on July 14, 1998 and relates to a multi-layer business form

(Docket No. 215, Ex. A; Docket No. 196 at 3; Docket No. 216, Ex. A).  Reynolds asserts that

Performance sells two multi-layer business forms, PAP-FL-SOLD and PAP-FL-TRADE forms,

which infringe claims 1-17 and 15-17, respectively, of the '543 Patent (Docket No. 216 at 4).

Claims 1, 9, 15 and 17 are the independent claims of the '543 Patent (Docket No. 215 at Ex. A).

Claims 2-8 depend from Claim 1, Claims 10-14 depend from Claim 9, and Claim 16 depends

from Claim 15 (Docket No. 215 at Ex. A).

The following are the disputed claim terms of the '543 Patent and the parties proposed

construction thereof:

1. TOP/TOP FORM BLANK:

Performance's Proposed Construction: "Uppermost" or "Uppermost Form in the Multi-Layer Form Set."

Reynolds' Proposed Construction: "A form blank layered above the other form blanks."

2. FORM BLANK:

Performance's Proposed Construction: "A manufactured form or document containing no pre-printed text or information."

Reynolds' Proposed Construction: "Partially prepared document including printed information and blank spaces for filling in information."

3. SET:

Performance's Proposed Construction: When describing the forward sets, "At least three forms." When describing the rearward sets, "At least two forms." In the context of the left and right sets, "Five or more forms."

Reynolds' Proposed Construction: "Two or more items."

4. EDGE:

Performance's Proposed Construction: "Literal border or boundary of the form." When read with the term "secured at (or along) said upper edges" as "attached at their literal edges."

Reynolds' Proposed Construction: "Adjacent to the border." When read with the term "secured at (or along) said upper edges" as "Secured together in the region adjacent the border."[1]

5. AREA OF SPECIAL PRINTED MATTER:

Performance's Proposed Construction: Performance asserts that this term is indefinite and

---

[1] The parties agree that the terms "secured at said upper edge"; "secured together along their upper edges"; and "secured together along their said upper edges" mean "held together at an edge which is opposite the lower edge." (Docket No. 216, Ex. C).

2

incapable of reasonable interpretation by those skilled in the art.

Reynolds' Proposed Construction: "Matter that is printed, typed, or written in the spaces provided on a form blank."

6. DOCUMENTS HAVING SEPARATE LEGAL MEANING:

Performance's Proposed Construction: Performance asserts that this term is indefinite and incapable of reasonable interpretation by those skilled in the art.

Reynolds' Proposed Construction: "Form blanks suitable for a variety of business and legal transactions."

7. EFFECTIVE AREA; EFFECTIVE PORTION; INEFFECTIVE AREA; INEFFECTIVE PORTION:

Performance's Proposed Construction: Effective Area or Portion: "An area or portion of a carbon sheet or carbonless form to effect the transfer of information." Ineffective Area or Portion: "An area or portion of a carbon sheet or carbonless form to prevent the transfer of information from preceding forms."

Reynolds' Proposed Construction: Effective Area or Portion: "An area or portion to effect the transfer of information." Ineffective Area or Portion: "An area or portion to prevent the transfer of information".

8. FORM BLANK IMMEDIATELY ABOVE:

Performance's Proposed Construction: "The form directly above the referenced form, irrespective of interleaved carbon sheets."

Reynolds' Proposed Construction: Reynolds argues that this term does not require further construction.

3

9.  SUBSTANTIALLY LONGER LENGTH:

Performance's Proposed Construction: "Having a length approximately fifty percent greater than the referenced forms(s)."

Reynolds' Proposed Construction: "Having a length sufficient to display information."

10.  SHEETS OF COPY-PRODUCING MEDIUM:

Performance's Proposed Construction: "A separate sheet used to transfer information from one form to a subjacent form, as opposed to the coating applied to forms in a carbonless copy system."

Reynolds' Proposed Construction: Reynolds does not offer a proposed construction of this term.[2]

11.  EACH SUCCESSIVELY LOWER SUBJACENT BLANK:

Performance's Proposed Construction: "Every form in the set located lower than the referenced form."

Reynolds' Proposed Construction:  Reynolds argues that the term does not require further construction.

12.  A MULTI-LAYER FORM FOR CONVEYING INFORMATION TO A LIENHOLDER FOR A MOTOR VEHICLE:

Performance's Proposed Construction: "A multi-layer form set that contains at least one form that is included for the purpose of conveying information to a lienholder for a motor vehicle."

Reynolds' Proposed Construction: Reynolds argues that since this language is found in a claim preamble, it does not limit the scope of the claim, and therefore, does not require additional

---

[2]The parties have agreed on the construction of the component parts: "sheets" and "copy producing medium".

construction.

13.  PLURALITY:

Performance's Proposed Construction: "More than Two."

Reynolds' Proposed Construction: "Two or More."

14.  SEPARABLE:

Performance's Proposed Construction: "Capable of being separated at a line of separation."

Reynolds' Proposed Construction: "Capable of being separated."

15.  FIRST SUBJACENT BLANK:

Performance's Proposed Construction: "The first form lower than the referenced form."

Reynolds' Proposed Construction: "The first of the plurality of subjacent form blanks."

16.  AT LEAST SOME:

Performance's Proposed Construction: "Two or more."

Reynolds' Proposed Construction: "Certain one or ones."

17.  SUBSTANTIALLY ALIGNED:

Performance's Proposed Construction:  "The upper edges of the form blanks and the sheets of
copy-producing medium are co-located."

Reynolds' Proposed Construction: "Sufficiently aligned to create a useful, functional form."

18.  COPY-PRODUCING MEANS FOR TRANSFERRING INFORMATION FROM SAID
TOP FORM BLANK TO SAID SUBJACENT FORM BLANKS:

The parties agree that the only dispute about this term is whether "and equivalents thereof"
should be included in the construction of the claim term.

(Docket No. 216, Ex. D).

ANALYSIS

A determination of patent infringement is a two step analysis. First, the scope and meaning of the asserted claims are determined. Cybor Corp. v. FAS Technologies, Inc., 138 F. 3d 1448, 1454 (Fed. Cir. 1998) (citing Markman v. Westview Instruments, Inc., 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)). Next, the construed claims are compared to the allegedly infringing device. Id. Claim construction is a matter of law for the Court to decide. Id.

"It is a 'bedrock principle' of patent law that 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. A.H Corp., _____ F. 3d ____, ____, 2005 WL 1620331 (Fed. Cir. July 12, 2005) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F. 3d 1111, 1116 (Fed. Cir. 2004). Generally, words in a claim are given their ordinary and customary meaning. Vitronics v. Conceptronic, Inc., 90 F. 3d 1576, 1582. The ordinary and customary meaning of a claim term is the meaning that would be attributed to those words by persons skilled in the relevant art in question at the time of the invention. Innova, 381 F. 3d at 1116. In some instances, the ordinary and customary meaning of a claim term is readily understood, and "claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Phillips, _____ F. 3d at ____, (quoting Brown v. 3M, 265 F. 3d 1349, 1352 (Fed. Cir. 2001). "In such circumstances, general purpose dictionaries may be helpful." Id. Many times, however, understanding the ordinary and customary meaning of the claim term in a field of art requires more elaborate interpretation. Id.

In interpreting a claim term, the Court may consider both intrinsic and extrinsic evidence.

Vitronics, 90 F. 3d at 1582. Generally, the best sources available to the public to show what a person of skill in the art would have understood the disputed claim terms to mean "include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Phillips, ___ F. 3d at ____ (internal quotations and citations omitted).

In determining proper construction of claim terms, the Court should look to the words of the claims, both asserted and non-asserted, to define the scope of the patented invention. Vitronics, 90 F. 3d at 1582. The claims also must be construed in a manner consistent with the specification. Phillips, ___ F. 3d at ____. The person of ordinary skill in the art is deemed to read the claim terms in the context of the entire patent, including the specification. Phillips, ___ F. 3d at ___. "The pertinence of the specification to claim construction is reinforced by the manner in which a patent is issued." Phillps, ___ F. 3d at ____. The Patent and Trademark Office determines the scope of the claims of a patent by "giving claims their broadest reasonable construction 'in light of the specification as it would be interpreted by one of ordinary skill in the art.'" Id. (quoting Am. Acad. of Sci. Tech. Ctr., 367 F. 3d 1359, 1364 (Fed. Cir. 2004). A patentee also may choose to act as his own lexicographer and use terms in a manner other than their ordinary meaning. Vitronics, 90 F. 3d at 1582. To that end, the specification may reveal a special definition of a claim term that differs from the meaning it would ordinarily possess. Id.

In addition, "it is entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." Id. Furthermore, "a construction that excludes a preferred embodiment 'is rarely, if ever, correct.'" C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F. 3d 858, 866 (Fed. Cir. 2004) (quoting Vitronics,

7

90 F. 3d at 1582). Finally, the Court may consider the prosecution history of the patent itself to assist it in its determination. <u>Vitronics</u>, 90 F. 3d at 1582.

Extrinsic evidence may always be considered to assist in an understanding of the underlying technology; provided, however, extrinsic evidence may never be used to vary or contradict the terms of a claim <u>Interactive Gift Exp., Inc. v. Compuserve, Inc.</u>, 256 F. 3d 1323, 1332 (Fed. Cir. 2001). "Within the class of extrinsic evidence, technical dictionaries and treatises may be useful in claim construction." <u>Phillips</u>, ___ F. 3d at ___ (citing <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158 F. 3d 1243 (Fed. Cir. 1998). In addition, "Extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." <u>Id</u>.

At the Markman hearing, the parties presented the claims, the specifications, the preferred embodiments, dictionary definitions, expert testimony, and demonstrative exhibits to support their respective construction of the disputed claim terms.

The Court construes the claim terms as follows:

A. Construction of the Claim Term "Top".

Reynolds argues for a construction of the term "Top" that does not necessarily mean the uppermost or topmost, whereas Performance requests a construction that literally means the topmost.

The claim term "Top" is used in the disputed claims in conjunction with the terms "Form

8

Blank", "Surface" and "Blank". For example, the claims teach a "plurality of form blanks including a top form blank and a plurality of subjacent form blanks layered below said top form blank"; a "unitary structure having a top surface defined by one side of said top form blank"; "form blanks being secured together along their upper edges to form a unitary structure having a top surface for simultaneous computer printing on all of said form blanks"; "said top surface of said structure forming one side of a top blank"; and "left and right sets of form blanks each including a top blank and a plurality of subjacent form blanks having length greater than that of said top blank." (Docket No. 215, Ex. A). There is nothing in the plain meaning of these terms or the intrinsic record before the Court to indicate that the term "Top" should not be given its plain and ordinary meaning. To that end, the relevant general purpose dictionary definitions of "Top" are: "the highest point, level or part of something; the upper end, edge, or extremity"; "the part of a thing placed uppermost in use"; "the surface normally or at present facing upwards as opposed to the undersurface; the side that overlies the whole." Webster's Third New International Dictionary, 2409 (1993).

Accordingly, consistent with the plain meaning of the claim term and its common usage, the Court construes the term "Top" to mean "the highest or uppermost".

B. Construction of the Claim Term "Form Blank".

Reynolds argues for an interpretation of "Form Blank" that contemplates a partially prepared form, whereas Performance argues for a construction that means a form void of any pre-printed material.

To support its proposed construction, Reynolds points to the claims themselves which refer to "form blanks having first areas of special printed matter with said first areas of special

printed matter" (Docket No. 215, Ex. A). Reynolds also cites to the specifications which describe the invention as a form that may contain pre-printed areas such as the subject matter or identification of the purpose of the form blanks and which refer to "an improved assembly or set of partially prepared documents or business form blanks." (Docket No. 215, Ex. A). In addition, the specifications state that "the title of each succeeding blank, or other information, can be provided on [the] visible lower edge" and that "the lower extending portion of the rearward second set of documents can be provided with preprinted information for informational or educational purposes." (Docket No. 215, Ex. A). Furthermore, Reynolds argues that the preferred embodiment reflects a form blank suitable for a motor vehicle trade-in transaction that contains areas of pre-printed identifying information such as "Notice of Release of Liability", "Trade-In Payoff Adjustment", "Authorization of Payoff", "Power of Attorney", and "Bill of Sale" (Docket No. 215, Ex. A).

To support its proposed construction, at the Markman hearing, Performance presented the deposition testimony of, Jeffrey M. Sisilli ("Sisilli"), the inventor of the '543 Patent, wherein Sisilli unequivocally stated that a "form blank" does not contain any printed matter. In addition, at the Markman hearing, Performance presented its expert, Mr. Russell ("Russell"), who testified that "form blank" means blank form devoid of any printed material. Performance also argues that the dictionary definition of "blank" supports its proposed construction.

The Court finds that while the specifications and the preferred embodiment refer to areas of pre-printed material and a partially prepared form, the claim term "form blank" must be construed in light of the overall purpose of the invention, the claim terms and all embodiments of the invention as reflected in the '543 Patent. More specifically, while Figure 1 reflects a

10

preferred embodiment of the invention that shows areas of pre-printed material, when read against the claims, the specifications and the description of the preferred embodiment, this figure simply reflects the variable data that may be affixed to the "form blank" and not pre-printed material required by the claims of the '543 Patent. This interpretation is supported by the description of the preferred embodiment which states, "it will be understood, however, that the present invention is applicable to form blanks suitable for a variety of business (including legal) transactions." (Docket No. 215, Ex. A). In addition and as well be discussed further, the specifications, which reflect "areas of special printed matter", clearly define these areas as information that is transaction specific, i.e., the identification of a motor vehicle being traded (Docket No. 215, Ex. A). Also of significance is that the preferred embodiments reflected in Figures 3,4,5, 6 and 7 show a business form set devoid of any pre-printed material (Docket No. 215, Ex. A). Most significantly, there is nothing in the claim terms themselves that can be read as requiring areas of a partially prepared form. The only reference in the claims to printed areas on the form blank is to the transaction specific "areas of special printed matter" and a lower portion of the subjacent form blanks for the "display of information", suggesting a blank form adaptable to a variety of purposes (Docket No. 215, Ex. A).

Thus, the intrinsic evidence before the Court indicates that references to "partially prepared", "areas of special printed material" and "information" in relation to the term "form blank" refers to the variable data that may be affixed to a "form blank" and not to any pre-printed matter that itself defines the form blank. Any construction that reads otherwise would ignore the plain meaning of the term "blank" as used in the claims and the application of the invention to a variety of business transactions.

11

To the extent that any ambiguity remains in the claim term, the testimony of Sisilli and Russell that "form blank" means "blank form" ensures that the Court's construction of the term is consistent with that of a person of skill in the art at the time of the invention.

Accordingly, the Court construes the term "form blank" to mean a "manufactured form or document devoid of any pre-printed material or text."

C.  Construction of the Claim Term "Top Form Blank".

Given the Court's construction of the terms "Top" and "Form Blank", the Court construes the term "Top Form Blank" as meaning "highest or uppermost form blank".

D.  Construction of the Claim Term "Set".

Claims 1, 9, 15 and 17 of the '543 Patent teach left and right sets of form blanks (Docket No. 215, Ex. A).  Claims 1 and 9 teach rearward and forward sets of form blanks (Docket No. 215, Ex. A).  Thus, the words of the claims clearly indicate a set of form blanks containing at least a left and right set of blanks and a rearward and forward set of blanks, or, in other words, a set containing at least four form blanks.  The specifications of the '543 Patent also describe "a left first set of blanks" and "a right second set of blanks" so that "two sets of documents intended for separate entities can be prepared."  (Docket No. 215, Ex. A).  In addition, the description of the preferred embodiment and the drawings describe "the form blanks of the Power of Attorney forms on the left side of the vertical lines of separation and of the Bill of Sale forms on the right side of the vertical lines of separation [as] substantially longer than the Notice of Liability forms and the Trade-In Payoff Adjustment forms, indicating a form set containing at least four forms (Docket No. 215, Ex. A).

Accordingly, to give effect to the clear meaning of the words of the claims, the

12

specification and the preferred embodiment, the Court construes the term "Set" to mean "having at least four form blanks."

E.  Construction of Claim Term "Edge".

The parties agree that the claim terms "secured at said upper edge"; "secured together along their upper edges"; and "secured along said upper edges" mean "held together at an edge which is opposite the lower edge."  Performance further argues that the term "edge" means "literal edge".  In response, Reynolds asserts that the claim term simply requires that the forms be secured together in the region adjacent to the border, not necessarily at the mathematical border line itself.

The '543 Patent reveals "form blanks [] secured together along their aligned upper edges to form a unitary structure."  (Docket No. 215, Ex. A).  The specifications also reveal that "the form blanks and the sheets of carbon paper are assembled to have their upper and side edges in registry, and can be held together by a narrow strip of adhesive running along the top edge of assembly." (Docket No. 215, Ex. A).  In addition, the specifications reveal that the form blanks have "horizontal first lines of separation" across their entire width and parallel to the aligned upper edges.  Furthermore, an "aligned horizontal row of holes" can be provided in the form blanks parallel to the top edge of the assembly "downwardly of the strip of adhesive" in order to provide a means for driving the assembly during a printing operation (Docket No. 215, Ex. A). Finally, the patent drawings reveal the placement of the "narrow strip of adhesive" in an area above and parallel to the "aligned horizontal row of holes".

The Court finds that the '543 Patent's written description of the form set as allowing for a narrow strip of adhesive running along the top edge, an aligned horizontal row of holes parallel

13

to the top edge and downwardly of the strip of adhesive, and aligned horizontal first lines of separation parallel to the aligned upper edges and downwardly of the aligned horizontal row of holes mandates a construction of the term "edge", when read in context of the claim terms "secured at said upper edge", "secured together along their upper edges", and "secured along said upper edges", as follows: "secured at the area immediately above and adjacent to the top border of the set of form blanks and upwardly of a row of holes parallel to the top edge and horizontal first lines of separation."

F.  Construction of the Claim Terms "Area of Special Printed Matter" and "Documents Having Separate Legal Meaning".

Performance asserts that the claim terms "documents having separate legal meaning" and "area of special printed matter" are indefinite and make Claims 15 and 17, which contain the terms, invalid.  Reynolds responds by offering its own construction of the terms.

With respect to construction of the claim term "documents having separate legal meaning,", the term is used in the disputed claims in reference to the ability to separate the form blanks along lines of separation "into documents having separate legal meaning."(Docket No. 215, Ex. A).  The description of the preferred embodiment states that the invention "is applicable to form blanks suitable for a variety of business (including legal) transactions" and makes reference to forms suitable to a motor vehicle transaction (Docket No. 215, Ex. A).  The patent drawings reflect the variety of purposes, such as a form for "Notice of Release of Liability" and a form for "Trade-In Payoff Adjustment", to which the form may be adapted.  In addition, the term "legal" is commonly used as meaning "created by construction of law or recognized as such by law"; "conforming to or permitted by law or established rules; according to the principles of

14

law; conforming to the procedures and methods prescribed by law." Websters Third New International Dictionary, 1290 (1993).

Given the use of the term as set forth in the claims, the specifications, the description of the preferred embodiment, and the relevant common usage definition of the terms "legal", the Court construes the claim term "documents having separate legal meaning" as meaning "form blanks adaptable for a variety of business transactions permitted by or conforming to principles of law."

With respect to the claim term "area of special printed matter", the specifications of the '543 Patent give as an example of an "area of special printed matter" as "the printed matter relating to identification of a motor vehicle being traded in". In light of this use of the claim term in the specifications and the Court's related construction of the term "documents having separate legal meaning", the Court determines it is appropriate to construe the claim term "area of special printed matter" as "transaction specific information that can be printed, typed or written in areas provided on a form blank."

G. Construction of the Claim Terms "Effective Area"; "Effective Portion"; "Ineffective Area" and "Ineffective Portion".

Performance and Reynolds dispute whether the terms "effective and ineffective areas" and "effective and ineffective portions" refer and are limited to distinct areas on a carbon sheet or carbonless form. The claims of the '543 Patent make repeated reference to the effective and ineffective portions of the carbon sheets or copy-producing medium portion of the form blanks. For example, Claim 3 of the '543 Patent refers to "sheets of copy-producing medium hav[ing] both an effective area to effect transfer of information to the form blank immediately below and

15

an ineffective area to prevent transfer of information to the form blank immediately below."

(Docket No. 215, Ex. A).  Claim 10 of the '543 Patent refers to "copy-producing means hav[ing]

both an effective area to effect transfer of information for selective transfer of information."

(Docket No. 215, Ex. A).  Claim 15 of the '543 Patent refers to "a first sheet of carbon paper

having an effective portion" and "a second sheet of carbon paper having effective and ineffective

portions."  (Docket No. 215, Ex. A).  Claim 17 of the '543 Patent refers to "first copy-producing

means ... having an effective portion" and "second copy-producing means ... having an effective

portion and an ineffective portion." (Docket No. 215, Ex. A).  The specifications also make

repeated reference to the effective and ineffective portions on or of the copy-producing medium.

In addition, the specification describe a carbonless copy system wherein "the form blanks are

themselves provided with effective and non-effective portions."  (Docket No. 215, Ex. A).

Given the plain language of the claims and the description of the invention as set forth in

the specifications, the Court construes the claim terms "Effective Area", "Effective Portion"

"Ineffective Area" and "Ineffective Portion" as referring to portions or distinct areas on the

sheets of carbon paper or carbonless form.

H.  Construction of the Claim Term "Form Blank Immediately Above".

Reynolds argues that the claim term "form blank immediately above" does not require

additional construction, whereas Performance requests further construction of the term

"immediately" to mean "directly".  The claim term "form blank immediately above" is used in

the claims and in the specifications of the '543 Patent to describe the positioning of the separable

sets of blank forms in relation to each other in the formation of the business form set.  There is

nothing in the claim terms or the language of the specifications to indicate that the term

16

"immediately" should not be given its ordinary and customary meaning. In this regard, the relevant common usage dictionary definition of the term "immediately" means "in direct connection or relation." Webster's Third New International Dictionary, 1129 (1993). Accordingly, the Court construes the term "form blank immediately above" as referring to "the form blank directly above the referenced form blank."

I. Construction of the Claim Term "Substantially Longer Length".

The claim term "Substantially Longer Length" is used in the claims to describe the relationship of a "forward first set of documents" and a "rearward second set of documents". The "rearward second set of documents" is described as being "of substantially longer length" than the "forward first set of documents" (Docket No. 215, Ex. A). Performance requests a construction of the term "substantially longer length" as distinct from the increases in length of the blank forms reflected by the claim terms "form blank having length greater than said form blank immediately above it to define a lower portion extending below said lower edge of said form blank immediately above it, for the display of information." Reynolds asserts that the term "substantially longer length" should be construed as "additional length sufficient to display information."

The clear meaning of the words of the claims clearly indicates that the term "substantially longer length" means something different that the term "form blank having length greater ... for the display of information." In addition, the preferred embodiment of the '543 Patent depicts a form blank where the "rearward second set of documents" are significantly longer than the "forward first set of documents", and the increase in length is distinguishable from the incremental increase in length between the adjacent forms of the set (Docket No. 215, Ex. A).

17

The description of the preferred embodiment also reflects that the increase in length occasioned by the "form blank having length greater ... for the display of information" is for purposes of an "information band" for identification of purpose or other informational purposes, whereas the additional length provided for between the "forward first set of documents" and the "rearward second set of documents" is for "preprinted information for informational or educational purposes." (Docket No. 215, Ex. A).

Accordingly, the Court construes the term "Substantially Longer Length" as meaning "a length greater than the incremental increases provided for by the claim term 'lower portion extending below said lower edge of said form blank immediately above it, for the display of information' so as to be substantial and to allow for preprinted information for informational or educational purposes."

J. Construction of the Claim Term "Sheets of Copy Producing Medium".

The '543 Patent provides for "sheets of copy-producing medium". The parties agree that "sheets" means "more than one sheet" and that "copy producing medium" means "a carbon sheet or a carbonless copy system" ( Docket No. 216, Ex. D). Performance further asserts that the term is limited to sheets of copy-producing medium that are separate from the actual forms compiled in the multi-layer form set. Performance bases its argument on the fact that the claims refer to the "sheets" as "interleaved" between the forms and makes reference to how "sheets of copy-producing medium" are secured at the top stub with the forms. Reynolds argues that no further claim construction is required.

The claims refer to "sheets of copy-producing medium interleaved with said plurality of form blanks"; "sheets of copy-producing medium hav[ing] both an effective area ... and an

18

ineffective area"; "copy-producing means for transferring information"; "copy-producing means hav[ing] an effective area"; "a first sheet of carbon paper having an effective portion"; and "copy-producing means for transferring information." (Docket No. 215, Ex.A). In addition, the specifications and the description of the preferred embodiment clearly provide for a carbonless copy system where the back and front facing sides of the form blanks are themselves provided with effective and non-effective portions (Docket No. 215, Ex. A). Given the evidence in the intrinsic record, the Court finds that no further limiting construction of the term "sheets of copy-producing medium" is warranted.

K. Construction of the Claim Term "Each Successively Lower Subjacent Blank".

Performance requests a construction of the claim term to reflect that the term "each successively lower subjacent blank" refers to "every" form beneath the referenced form. Reynolds argues that no further construction of the claim term is warranted. The claims of the '543 Patent reflect a "plurality of subjacent form blanks layered below said top form blank" with "each successively lower subjacent form blank;" "having length greater than said form blank immediately above it to define a lower portion extending below said lower edge of said form blank immediately above it for the display of information." The specifications and the preferred embodiment also reflect a business form set where each subjacent form blank is provided with a portion extending below the lower edge of the form blank immediately above such as to form an information band or extending portion for identification (Docket No. 215, Ex. A). Thus, given the clear meaning of the claims, the specifications and the preferred embodiment of the form, the Court construes the term "each successively lower subjacent blank" as meaning "every form

19

blank beneath the referenced form."

L.  Construction of the Claim Term "A Multi-Layer Form for Conveying Information to a Lienholder for a Motor Vehicle".

The preamble to Claims 15 and 17 contains the requirement of "a multi-layer form for conveying information to a lienholder for a motor vehicle."  Reynolds argues that the purpose of the business form stated in the preamble is not limiting.  Performance asserts that the preamble provides additional requirements for the claims.

The law is clear that "if [] the body of the claim fully and intrinsically sets forth the complete invention, including all of the limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation."  Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F. 3d 1298, 1305 (Fed. Cir. 1999) (citations omitted).  The Court finds that Claims 15 and 17 set forth the complete invention and that the preamble to Claims 15 and 17 offers no distinct definition of any of the claimed invention's limitation.  Accordingly, the Court finds that the phrase "for conveying information to a lienholder for a motor vehicle" contained in the preamble to Claims 15 and 17 merely states the intended use of the invention and cannot be construed as a limitation included in the claims.

M.  Construction of the Claim Term "Plurality".

Reynolds argues for a construction of the term "plurality" that means "two or more".  Performance asserts that the term "plurality" means "more than two forms".  Reynolds proposed construction of the term rests on case law that holds "plurality" means two or more.  See, e.g.,

20

<u>Bilstad v. Wakalopulos</u>, 386 F. 3d 1116, 1121-23 (Fed. Cir. 2004); <u>York Products, Inc. v.</u> <u>Central Tractor Farm & Family Center</u>, 99 F. 3d 1568, 1575 (Fed. Cir. 1996). Performance argues that Reynolds' proposed construction ignores precedent that establishes that the term "plurality" must be construed in light of the entire patent. <u>See</u>, <u>Bilstad</u>, 386 F. 3d at1121-23.

The Court concludes that the term "plurality" must be construed in light of the plain meaning of the word as used in '543 Patent. <u>See</u>, <u>Id</u>.; <u>York Products</u>, 99 F. 3d at 1575. In that regard, the term "plurality" is used in the claims of the '543 Patent to describe "a plurality of layered form blanks"; "a plurality of sheets of copy-producing medium"; a "plurality of form blanks"; and a "plurality of subjacent forms blanks". (Docket No. 215, Ex. A). As to what is meant by a "plurality of form blanks" or a "plurality of copy-producing medium", the Court looks to Claims 15 and 17 of the '543 Patent which refer to a "top form blank", a "first subjacent blank", "a second subjacent blank", a "first sheet of carbon paper", a "second sheet of carbon paper", a "first copy-producing means" and a "second copy producing means" (Docket No. 215, Ex. A). In addition, the specifications and the patent drawings reveal a five layer form, and the preferred embodiment reflects a form set that contains three forms in the "first forward set" and two forms in the "rearward second set" and three sheets of "copy-producing means" (Docket No. 215, Ex. A). Accordingly, to give effect to the term "plurality" as it is used in the "543 Patent in conjunction with the terms "form blank" and "sheets of copy-producing medium", the Court construes the term "plurality" to mean "more than two".

N. Construction of the Claim Term "Separable".

The term "separable" is used to describe the ability to separate sheets of copy-producing medium from the form blanks. For example, in Claim 8 "said sheets of copy-producing medium

21

are separable from said upper edges of said sheets of copy-producing medium." (Docket No. 215, Ex. A). Claims 1 and 9 describe the form blanks as having "horizontal lines of separation extending across the entire width thereof" and "said form blanks and sheets of copy-producing medium being provided with a vertical line of separation perpendicular to said horizontal lines of separation." (Docket No. 215, Ex. A). The Claims also describe that "said vertical lines of separation permitting separation of said form blanks and said sheets of copy-producing medium into left and right sets of documents"; "said form blanks and said sheets of copy-producing medium into left and right sets of documents"; and "said horizontal lines of separation permitting separation of said form blanks from each other." (Docket No. 215, Ex. A). Claim 15 describes a "first sheet of carbon paper having a second line of separation in registration with said second lines of separation provided in said form blanks" and a "second sheet of carbon paper having a second line of separation in registration with said second lines of separation provided in said form blanks." (Docket No. 215, Ex. A).

Clearly, the language of Claims 1 and 9 when read in conjunction with Claim 8 contemplates sheets of copy-producing medium that are separable along the vertical lines of separation. Claim 15 also contemplates sheets of copy producing medium that are separable along horizontal lines of separation. In addition, the description of the preferred embodiment reflects vertical and horizontal lines of separation that extend through the form blanks and the sheets of copy producing medium (Docket No. 215, Ex. A). This also is the preferred embodiment of the invention reflected in Figure 7. Thus the claims and the preferred embodiment clearly reflect sheets of copy-producing medium that are capable of being separated at vertical and horizontal lines of separation.

22

Accordingly, the Court construes the term "separable" as meaning "capable of being separated along the horizontal and vertical lines of separation."

O. Construction of the Claim Term "First Subjacent Blank".

The claim term "First Subjacent Blank" is used in Claim 15 and 17 of the '543 Patent in relation to the term "Top Blank". As indicated earlier, the Court has construed the claim term "Top Form Blank" to mean "highest or uppermost form blank." There is nothing in the clear language of the claims and specifications to indicate that "First Subjacent Blank" should not be given its ordinary and customary meaning. The general purpose dictionary definitions of the term "first" mean "being number one in a countable series"; "beginning a series"; "preceding all others"; "foremost in position"; "being in front of all others"; "before any or some other person or thing". Webster's Third New International Dictionary, 856 (1993). The general purpose dictionary definitions of the term "subjacent" mean "to lie under"; "lying under or below". Webster's Third New International Dictionary, 2275 (1993). Thus, the Court finds that given the clear language of the claims and the relevant dictionary definitions of the terms "first" and "subjacent", the term "First Subjacent Blank" means "the first form blank below the uppermost form blank".

P. Construction of the Claim Term "At Least Some".

The parties dispute the use of the claim term "At Least Some" as it is used in Claim 3 in reference to the phrase "at least some of said sheets of copy-producing medium have both an effective area to effect transfer of information to the form blank immediately below and an ineffective area to prevent transfer of information to the form blank immediately below". Again, there is nothing in the clear language of the claims and the specifications to indicate that the term

23

"at least some" should not be construed in conformity with its widely accepted meaning. The dictionary defines "some" as: "being one, a part, or an unspecified number of something"; "being always at least one but often a few and sometimes all of -- used as a sign of particularity to indicate that the logical proposition in which it occurs is asserted only of a subclass or certain existent members of the class denoted by the term which it modifies." Webster's Third New International Dictionary, 2171 (1993). The relevant dictionary definition of "least" means: "at the lowest estimate; as the minimum." Webster's Third New International Dictionary, 1287 (1993). The preferred embodiment of the invention gives further meaning to term "at least some" when used in context of the "sheets of copy producing medium containing ineffective and effective portions." More specifically, the preferred embodiment clearly shows at least three sheets of copy-producing medium containing both effective and ineffective areas (Docket No. 215, Ex. A). Accordingly, the Court construes the term "at least some", when used in the context of "sheets of copy-producing medium having both an effective area to effect transfer of information to the form blank immediately below and an ineffective area to prevent transfer of information to the form blank immediately below" as meaning "at least one".

Q. Construction of the Claim Term "Substantially Aligned".

The term "substantially aligned" is used in the claims to refer to the alignment of the form blanks and the sheets of copy-producing medium along the top edge of the form set (Docket No. 215, Ex. A). As with so many of the disputed claims of the '543 Patent, there is nothing in the claim terms to indicate that the term "substantially aligned" should not be construed in conformity with its widely accepted meaning. To further support this view, the description of the preferred embodiment reflects that the form blanks and sheets of carbon paper

24

are assembled to have their top and side edges in "registry". In addition, the preferred embodiment of the invention as reflected in Figures 1-7 shows the form blanks and sheets of copy-producing medium precisely aligned along the top edge of the form set. In the context of the term "substantially aligned", common usage of the "substantial" means "of or relating to the main part of something"; "consisting of, relating to, sharing the nature of, or constituting substance." Webster's Third New International Dictionary, 2280 (1993). Aligned is used as meaning "to adjust or form to a line"; "to put into proper relative position or orientation"; or "to be in or come into precise adjustment or correct relative position." Webster's Third New International Dictionary, 53 (1993). "Register" is defined as "to make correspond exactly"; "exact placement"; "complete or virtual agreement with respect to position"; "to place or adjust so as to print in register"; "to correspond exactly"; and to "fit correctly in relative position; to be in correct alignment one with another". Webster's Third New International Dictionary, 1912 (1993).

Accordingly, given the plain meaning of the term as used in the claims, the relevant dictionary definitions, and the preferred embodiments of the invention, the Court construes the term "substantially aligned" to mean "to correspond precisely with the top edge of the form set".

R. Construction of the Claim Term "Copy-Producing Means for Transferring Information From said Top Form Blank to Said Subjacent Form Blanks".

The only dispute regarding this claim term is whether the claim construction should include the phrase "and equivalents thereof." The parties do not dispute that the phrase "copy-producing means for transferring information from said top form blank to said subjacent form blank" is a "mean plus function" clause. See, 35 U.S.C. §112. Performance argues that the issue

25

of equivalents under 35 U.S.C. §112, ¶6 need not be addressed at this stage, but should be addressed by the jury when infringement is considered.  Reynolds argues that the phrase "and equivalents thereof" is part of every means-plus-function construction in every patent case.

35 U.S.C. §112 ¶6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. §112 (2001).

The Court agrees with Reynolds that the plain language of the statute mandates that the construction of the phrase "copy-producing means for transferring information from said top form blank to said subjacent form blank should include the phrase "and equivalents thereof." The Court also agrees with Performance that no construction of the phrase "and equivalent thereof" is needed at this time.

Accordingly, the phrase "and equivalents thereof" is added to the end of the construction of the term "copy-producing means for transferring information from said top form blank to said subjacent form blank" already agreed to by the parties.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

Case 3:03-cv-00931   Document 260   Filed 08/03/05   Page 26 of 26 PageID #: 432